IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

**MICHELINA IAFFALDANO,**

    **Plaintiff,**

**vs.**

**SUN WEST MORTGAGE COMPANY, INC.,**

    **Defendant.**

_____/

## COMPLAINT

Plaintiff, Michelina Iaffaldano, by and through undersigned counsel, hereby sues Defendant Sun West Mortgage Servicing, and alleges as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Michelina Iaffaldano is a natural person over the age of 21. She is a citizen of the State of Florida and resides in Port Saint Lucie, Florida. She will be referred to hereafter as "Borrower."

2. Defendant Sun West Mortgage Company, Inc. ("Sun West") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of California. This Defendant is in the business of originating and servicing home equity conversion mortgages as that term is defined by 12 C.F.R. §1024.2(f) and that are guaranteed by the Federal Housing Administration. These types of mortgages are often referred to as "reverse mortgages."

3. Sun West is in the business of servicing federally related reverse mortgage loans. As a reverse mortgage servicer, Sun West is subject to specific federal laws and administrative regulations governing its mortgage servicing activities. These laws and regulations include, but

are not limited to, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et. seq*. (hereinafter "RESPA") and its implementing Regulation X, 12 C.F.R §1024 (hereinafter "Regulation X").

4. At all times material, Sun West serviced Borrower's reverse mortgage, which is secured by real property located in St. Lucie County, Florida.

5. Borrower's claims against Sun West arise under RESPA, 12 U.S.C. §2601 *et. seq.* Accordingly, this Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

6. The acts and omissions that give rise to this lawsuit either occurred in St. Lucie County, Florida or relate to real property and other business transactions that occurred in St. Lucie County, Florida. Accordingly, venue is proper in this Court.

## GENERAL ALLEGATIONS

7. Borrower owns a home located in Port Saint Lucie, Florida.

8. Borrower obtained an "equity conversion mortgage" also referred to as a "reverse mortgage" with Security One Lending as the Borrower

9. The terms of the mortgage required Borrower to maintain hazard insurance and flood insurance on the subject property. However, due to financial hardships she became unable to do so.

10. Beginning on or about August 2014 and continuing every year thereafter, Sun West obtained a series of force-placed hazard and flood insurance policies on Borrower's property. These hazard and flood insurance policies were issued by insurance companies through the surplus lines insurance market.

11. Under the terms of the mortgage, Borrower was obligated to pay the premium associated with the force-placed insurance coverage that Sun West obtained. If she failed to do so, Sun West was permitted to foreclose the mortgage against her home.

12. A foreclosure lawsuit filed by Sun West against the Borrower in the Circuit Court of the 19th Judicial Circuit in and for St. Lucie County was voluntarily dismissed in December 2016. The foreclosure was primarily the result of Borrower's inability to pay the premiums associated with the surplus lines force-placed insurance coverage by Sun West. Shortly following the dismissal of the foreclosure, Sun West assigned the Borrower's Mortgage to the Secretary of Housing and Urban Development ("HUD").

15. Borrower was and is financially unable to pay the premiums associated with the force-placed insurance coverage, which is considerably higher than insurance that could have easily been obtained through admitted carriers.

16. Borrower's reverse mortgage is fully guaranteed by the Federal Housing Finance Agency, an instrumentality of the United States government.

17. Because there is substantial equity in Borrower's home, and because the reverse mortgage is backed by the full faith and credit of the United States government, Sun West stood no risk of incurring a financial loss if the foreclosure were successful, even if Borrower's home were to sell for less than the amount of the debt.

18. Surplus lines insurance is almost always far more expensive than insurance sold by admitted insurers.

19. Unlike insurance sold by admitted carriers which is backed by the Florida Insurance Guarantee Agency (FIGA), an instrumentality of the State of Florida, policyholders purchasing surplus lines insurance are exposed to the insurer's credit risk. If a surplus policyholder has a

covered claim but the insurer became insolvent after issuing the policy, the policyholder will not receive any compensation. Conversely, the holder of a policy issued by an admitted insurer would receive full compensation from FIGA.

20. Unlike insurance sold by admitted carriers, the rates charged and policy used by surplus lines insurers must not be approved by Florida insurance regulators. The regulators review of these forms is focused on protecting the insured policyholder's interests.

21. Recognizing that surplus lines insurance is inherently less desirable than admitted coverage, the Florida Legislature has forbidden Florida licensed insurance agents and brokers from selling surplus lines insurance to Florida consumers unless comparable coverage cannot be obtained from the admitted market. *See* § 626.916, Florida Statutes.

22. At all material times, appropriate hazard and flood insurance covering Borrower's home was readily available through Florida licensed insurers participating in the admitted market.

## CLAIM FOR RELIEF

## VIOLATION OF THE RESPA

23. Borrower re-alleges and incorporates by reference the allegations in Paragraphs 1 through 22.

24. As part of the 2010 Dodd/Frank Wall Street Reform and Consumer Protection Act, Congress enacted amendments to RESPA found at 12 U.S.C. §2605(m) prohibiting mortgage servicers from imposing charges upon borrowers for force-placed insurance products that are not bona fide and reasonable. However, that provision did not become effective until January 10th, 2014 when the Consumer Financial Protection Bureau completed administrative rulemaking and RESPA's implementing regulation 12 C.F.R. §1024 ("Regulation X") took effect.

25. Sun West violated 12 U.S.C. §2605(m) with each and every hazard insurance transaction on Borrower's account after January 10th, 2014 because the charges for the overpriced surplus lines force-placed insurance on Borrower's account are not reasonable. [1]

26. As a result of Sun West's imposition of unreasonable charges for force-placed insurance, Borrower has been damaged by unlawful and inflated insurance charges imposed upon his account. These charges caused or exacerbated the previous foreclosure lawsuit.

27. Before the force-placed insurance policy premium was in place, the Borrower obtained a voluntary insurance hazard policy issued by People's Trust Insurance Company. The premium for the People's Trust policy was $2,484, which then increased in the amount of $191 due to wind mitigation adjustment resulting in a total premium of $2,675.

28. Conversely, Sun West obtained a force-placed insurance policy premium ("FPI Premium") on the Borrower's mortgage at a cost of $4,942.77 with an effective sate of August 25, 2014. Therefore, the Borrower's damages in this respect are equal to the difference between the FPI Premium and the voluntary premium. Additionally, the Borrower's damages were first incurred on August 25, 2014 and continued each year thereafter.

29. Sun West routinely procures surplus lines insurance on the Florida properties within its servicing portfolio. Accordingly, Sun West's violation of 12 U.S.C. §2605(m) represents a pattern and practice inconsistent with Sun West's obligations under RESPA.

30. Under 12 U.S.C. §2605(f), Borrower is entitled to an award of actual damages, statutory damages, attorney's fees, and litigation costs as a result of Sun West's violation of 12 U.S.C. §2605(m) described above.

---

[1] Because the flood insurance appears to be exempt from RESPA under 12 C.F.R. §1024.37 a.2.i, Borrower's RESPA claims are limited to the hazard insurance transactions.

WHEREFORE, Borrower demands trial by jury and respectfully requests that this Honorable Court enter final judgment in his favor in the total amount of his damages, including statutory damages, as determined at trial together with an award of reasonable attorneys' fees and taxable costs.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all claims so triable.

Respectfully Submitted,

THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.

1999 N. UNIVERSITY DRIVE STE. 213
CORAL SPRINGS, FL 33071
Phone: (954) 942-5270
Fax: (954) 942-5272
Email: jgolant@jeffreygolantlaw.com
**By: /S/ JEFFREY N. GOLANT, ESQ.**
Fla. Bar No.: 0707732
Counsel for Plaintiff Michelina Iaffaldano


THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.

1999 N. UNIVERSITY DRIVE STE. 213
CORAL SPRINGS, FL 33071
Tel:     (954) 942-5270
Fax:    (954) 942-5272
Email: krajabalee@jeffreygolantlaw.com
**By:  /S/ KEVIN RAJABALEE, ESQ.**
Fla. Bar No. 119948
Counsel for Plaintiff Michelina Iaffaldano